**E-FILED**
Friday, 08 January, 2016  02:58:02 PM
Clerk, U.S. District Court, ILCD

# UNITED STATES DISTRICT COURT
## FOR THE CENTRAL DISTRICT OF ILLINOIS
### SPRINGFIELD DIVISION

| | | |
|---|---|---|
| CHRISTOPHER J. COX, | ) | |
| | ) | |
| Petitioner, | ) | |
| | ) | |
| v. | ) | 3:15-cv-3097 |
| | ) | |
| CECIL POLLEY, | ) | |
| | ) | |
| Respondent. | ) | |

## AMENDED OPINION

**SUE E. MYERSCOUGH, U.S. District Judge:**

Petitioner Christopher Cox has filed a Petition under 28 U.S.C. § 2254 for Writ of Habeas Corpus by a Person in State Custody (d/e 1). Cox is currently in state prison, serving consecutively running prison terms of 3 years and 22 years. Cox was found guilty in 2005 of disorderly conduct, unlawful restraint, aggravated fleeing and eluding, domestic battery, aggravated unlawful restraint, and armed violence. Cox alleges that he is being held unlawfully by the State of Illinois. He seeks relief from this Court.

Respondent Cecil Polley—the Warden of the Graham Correctional Center in Montgomery County, Illinois, where Cox is serving his prison term—has filed a motion to dismiss (d/e 7). The

motion to dismiss (d/e 7) is GRANTED, and Cox's Petition under 28 U.S.C. § 2254 for Writ of Habeas Corpus by a Person in State Custody (d/e 1) is DENIED.

## I.   Background

Although Cox had a number of encounters with law enforcement during the summer of 2004, the events precipitating his ultimate arrest occurred on September 7, 2004.  Cox disputes the State's account of what happened that night, but the State says that police were called to Cox's home and found him holding a knife against his wife's throat.  Cox's wife escaped, although not before Cox cut her neck with the knife.  The police eventually subdued Cox with pepper spray and a "bean bag" gun.

In Cox's version of events, Cox was lying on his couch when Taylorville City Police Officer Vincent Childers arrived at Cox's door "seeking his revenge" because Cox had reported Officer Childers for stealing $3,400 of jewelry from Cox during a traffic stop earlier that summer.  Cox's wife let Officer Childers in and falsely told Officer Childers that Cox had been abusing her.  After Cox verbally protested, Officer Childers drew his revolver.  Cox raised his hands in the air, but Officer Childers shot Cox twice: once on the right

cheek and once on the collar bone.  Cox fled to his bedroom and surveyed his injuries: an abrasion on his right cheek, and "a large broken bone protruding out of the base of my neck, the skin was torn away and blood was seeping down my chest."  (Cox Affidavit, Ex. A at d/e 1-1.)

According to Cox, he then lit a cigarette and swallowed 7-8 pills of Trazodone, an antidepressant.  From the hallway outside Cox's bedroom, Officer Childers asked Cox to come out, which Cox did after taking a few drags from his cigarette and receiving assurance that Officer Childers would not shoot him.  When Cox emerged from the bedroom, Officer Childers sprayed pepper spray in Cox's eyes, gouged Cox's left eye, and squeezed Cox's broken bone until Cox lost consciousness.

So began, says Cox, a conspiracy between his wife, Officer Childers, the State's Attorney's office, and the Circuit Court of Christian County.

In November 2005, a jury in Christian County, Illinois, convicted Cox of disorderly conduct, unlawful restraint, aggravated fleeing and eluding, domestic battery, aggravated unlawful restraint, and armed violence.  The court vacated the conviction for

aggravated unlawful restraint, on the ground that it was a lesser-included offense of the conviction for armed violence.  On the armed violence count, the court sentenced Cox to a prison term of 22 years, with orders that Cox serve 85% of the sentence.  Cox received shorter prison terms of varying lengths—the longest being 3 years—on the other counts, all running concurrently to each other but consecutively to the 22-year sentence.

Cox appealed his conviction to the Illinois Appellate Court. Cox argued, among other things, that the court should not have required him to serve 85% of his 22-year sentence for armed violence without an explicit finding that the victim, Cox's wife, suffered great bodily harm.  The appellate court rejected Cox's arguments and affirmed the conviction.  (See d/e 8-1 at 10-11 ("the record supports the conclusion that the trial court's assessment that the victim's injuries constituted great bodily harm was accurate").)  On September 26, 2007, the Illinois Supreme Court denied Cox's petition for leave to appeal.  (See d/e 8-2 at 1.)

On December 5, 2007, Cox filed, in Christian County Circuit Court, a post-conviction petition under 725 ILCS 5/122.  (See d/e 8-3 at 2.)  The circuit court appointed an attorney to represent Cox,

and the resulting amended post-conviction petition alleged, among other things: (1) that the State failed to disclose all the evidence in its possession; and (2) that Cox's counsel on appeal was ineffective for failing to argue, among other things, that Officer Childers and Cox's wife had conspired to falsely accuse Cox. (See d/e 8-3 at 3.) On August 29, 2008, the circuit court dismissed the amended petition. (See d/e 8-3 at 4.)

Cox appealed the denial of his post-conviction petition to the Illinois Appellate Court. On July 16, 2010, the Illinois Appellate Court affirmed the circuit court's judgment. Cox then petitioned for leave to appeal to the Illinois Supreme Court. On January 26, 2011, the Illinois Supreme Court denied Cox's petition for leave to appeal. (See d/e 8-4 at 1.)

On March 6, 2012, Cox filed, in Christian County Circuit Court, a petition for relief from judgment under 725 ILCS 5/2-1401. (See d/e 8-5 at 2.) Cox argued, among other things, conspiracy, subornation of perjury, and actual innocence. (Id.) The court dismissed Cox's Section 2-1401 petition as untimely, and the appellate court affirmed. (See d/e 8-5 at 1.) On May 28, 2014, the Illinois Supreme Court denied Cox's petition for leave to appeal.

(See d/e 8-6 at 1.)

On March 24, 2015, Cox filed this petition for a writ of habeas corpus under 28 U.S.C. § 2254 (d/e 1).

## II.    Issues

### A.    Timeliness

Warden Polley urges the Court to dismiss Cox's Section 2254 petition.  The Warden argues that Cox's petition is untimely under 28 U.S.C. § 2244(d)(1).

A Section 2254 petition must be filed within 1 year of: (A) the date on which the judgment against the petitioner became final; (B) the date of the removal of an impediment preventing the petitioner from filing, if the impediment was caused by the State's actions in violation of the Constitution or laws of the United States; (C) the date on which the Supreme Court recognized a new constitutional right and made it retroactively applicable to cases on collateral review; or (D) the date on which the factual predicate of the petition's claim(s) could have been discovered through due diligence.  See 28 U.S.C. § 2244(d)(1)(A)-(D).

The Warden argues that 28 U.S.C. § 2244(d)(1)(A)—which requires Cox's petition to have been filed within 1 year of the date

on which the judgment against Cox became final—applies.  The warden argues that Cox has not alleged a State-created impediment to filing (Subsection (d)(1)(B)), a newly recognized and retroactive constitutional right (Subsection (d)(1)(C)), or a subsequent discovery of the factual predicate of his claim (Subsection (d)(1)(D)).  (Motion to Dismiss, d/e 7 at 4.)

The Court agrees that Cox has not alleged anything falling under the umbrella of Subsections (d)(1)(B) or (d)(1)(C).  Subsection (d)(1)(D), however, presents a slightly closer question, as Cox does cite several examples of "newly discovered evidence" in his petition.  See McQuiggin v. Perkins, 133 S.Ct. 1924, 1929 (2013) ("If the petition alleges newly discovered evidence … the filing deadline is one year from 'the date on which the factual predicate of the claim … could have been discovered through the exercise of due diligence.'") (quoting 28 U.S.C. § 2244(d)(1)(D)).

Cox first presents what he describes as the newly discovered affidavit of Bonnie Adermann, in which Ms. Adermann writes that Cox's wife admitted that she had lied when she told the police that Cox had attacked her.  For the purpose of assessing Cox's petition's timeliness, the most significant feature of the affidavit is its date:

September 3, 2013.  Cox filed this petition on March 24, 2015.  So even assuming that the affidavit represents a newly discovered factual predicate for Cox's petition, Cox did not file his petition until 1 year, 6 months, and 21 days after Ms. Adermann signed the affidavit—6 months and 21 days too late to meet the 1-year filing deadline.  Cox could, perhaps, argue that he did not discover the affidavit until sometime less than a year before he filed this petition. (Cox has not done so; indeed, Cox has not argued that Subsection (d)(1)(D) applies at all.)  But because the affidavit is clearly addressed to Cox himself, such an argument would strain credibility.  (See Affidavit of B. Adermann, d/e 1-1 at 5 ("[Your wife] did feel terrible when you received such a stiff sentence.  She claimed to be absolutely shocked by the sentence you were given.").)

Cox also cites numerous other "newly discovered" documents and photographs.  The petition does not state precisely when Cox supposedly discovered the documents and photographs, and none appear to have been discovered during the year preceding the March 24, 2015 filing of Cox's Section 2254 petition.  Indeed, the petition at least implies that some or all of the documents and photographs were withheld from Cox only during the first year of

his prosecution, perhaps for as long as 258 days.  (See d/e 1 at 5 ("Why were all of these photographs being withheld by police from the State's Attorney's Office?  For 258 days these were withheld from your petitioner.").)  And even assuming that the documents and photographs were withheld from the time of Cox's arrest in September 2004 until sometime around May 2005, a nearly 10-year delay (from May 2005 to March 2015) is nearly 9 years too long to meet Subsection (d)(1)(D)'s requirement that a Section 2254 petition be filed within 1 year of the evidence's discovery.

Finally, among the "newly discovered" material Cox cites are several missing pages from the transcript of the May 24, 2005 pretrial discovery hearing in his criminal case.  Cox claims these pages were previously missing while he pursued, from 2007 to 2011, his post-conviction petition under 725 ILCS 5/122.  Cox's petition does not explain how or when Cox came to discover the missing pages.  But even if Cox acquired them during the year prior to his March 24, 2015 filing of this Section 2254 petition, Cox himself was present at the May 2004 hearing, and so the content of the transcript of the hearing cannot be considered "newly discovered."

Because Subsections (d)(1)(B)-(D) do not apply to Cox's Section 2254 petition, under Subsection (d)(1)(A) the 1-year period during which Cox could file began when Cox's judgment became final.  28 U.S.C. § 2244(d)(1)(A).  After Cox was convicted, he appealed to the Illinois Appellate Court (Fifth District).  When the Illinois Appellate Court rejected Cox's arguments, he petitioned for leave to appeal to the Illinois Supreme Court.  The Illinois Supreme Court denied Cox's petition on September 26, 2007.  Cox then had 90 days within which to file a petition for a writ of certiorari to the United States Supreme Court.  <u>See</u> Sup. Ct. R. 13.  The deadline for Cox to do that passed—and Cox's judgment thus became final—on December 26, 2007.  <u>See</u> <u>Gonzalez v. Thaler</u>, 132 S.Ct. 641, 653-54 (2012) (if petitioner does not pursue review by U.S. Supreme Court, "the judgment becomes final at the expiration of the time for seeking such review—when the time for pursuing direct review in [the U.S. Supreme Court] expires") (internal quotation omitted).

Normally, then, the 1-year period during which Cox could file his Section 2254 petition in this Court would have been triggered on December 26, 2007, when the judgment against Cox became final.  However, the 1-year clock did <u>not</u> begin running then,

because 3 weeks earlier, on December 5, 2007, Cox had filed a post-conviction petition, under 725 ILCS 5/122, which remained pending.  See 28 U.S.C. § 2244(d)(2).  That post-conviction petition tolled the 1-year clock for more than 3 years, until the Illinois Supreme Court ultimately denied Cox's petition for leave to appeal the petition's dismissal.  The Illinois Supreme Court issued that denial on January 26, 2011.  Only then did the 1-year clock begin to run.  (Although Cox had 90 days after January 26, 2011 to file a petition for a writ of certiorari with the U.S. Supreme Court, the 1-year clock nonetheless ran during this time.  Tucker v. Kingston, 538 F.3d 732, 735 (7th Cir. 2008) (Section 2254 clock not tolled during petitioner's 90-day period to seek certiorari after state supreme court denies leave to appeal in post-conviction proceeding).)

As a result, Cox had through January 26, 2012, at the latest, to file a Section 2254 petition.  See Newell v. Hanks, 283 F.3d 827, 833 (7th Cir. 2002) (describing proper method of calculating such deadlines).  Because he did not do so, his March 2015 filing is untimely.

Although Cox did file, in Christian County Circuit Court in

March 2012, a petition for relief from judgment under 725 ILCS 5/2-1401, that filing did not affect the 1-year Section 2254 clock that had begun running on January 27, 2011, for two reasons. First, the 1-year Section 2254 clock had already expired—the last day Cox could file was January 26, 2012—by the time Cox filed the Section 2-1401 petition on March 6, 2012.  Thus, the filing of the Section 2-1401 petition did nothing to revive or reset the Section 2254 clock.  See De Jesus v. Acevedo, 567 F.3d 941, 943 (7th Cir. 2009) ("a state proceeding that does not begin until the federal year has expired is irrelevant").  And second, the Illinois courts found that the Section 2-1401 petition itself was untimely filed (see d/e 8-5 at 3).  Thus, the Section 2-1401 petition was not "properly filed" under the law governing Section 2254 petitions, and the petition could not have tolled the 1-year Section 2254 clock even if the clock had still been running.  See 28 U.S.C. § 2244(d)(2) (tolling 1-year Section 2254 clock during pendency of "properly filed" state court post-conviction motion); Brooks v. Walls, 301 F.3d 839, 840 (7th Cir. 2002) ("an untimely application for state collateral relief is not 'properly filed' and therefore does not extend the time in which to file a federal [Section 2254] petition").

In response to the Warden's motion to dismiss, Cox "concede[]s at this time that it is improbable that he can overcome the procedural time bar" and "apologize[s] for having sought relief in this court without having realized that he was time barred."   (See d/e 13 at 1, 3.)

To summarize: Cox had until January 26, 2012, at the latest, to file his Section 2254 petition.  Because Cox did not file until March 24, 2015, his filing is untimely.

## B.   **Equitable tolling**

For equitable reasons, a court may toll the 1-year period during which a Section 2254 petitioner normally must file.  Holland v. Florida, 560 U.S. 631, 645 (2010).  Such "equitable tolling" is available only if (1) the petitioner pursued his rights diligently; and (2) an "extraordinary circumstance" prevented a timely filing.  Id. at 649; see also Tucker v. Kingston, 538 F.3d 732, 734 (7th Cir. 2008) ("Before the principles of equitable tolling apply, a petitioner must demonstrate, first, that extraordinary circumstances outside of his control and through no fault of his own prevented him from timely filing his petition.").  Cox bears the burden of showing that he is entitled to equitable tolling.  Pace v. DiGuglielmo, 544 U.S. 408, 418

(2005).  Cox has not made such a showing.

First, Cox has not shown that he pursued his rights diligently. To the contrary, the 4 years that elapsed between January 26, 2011, when the Illinois Supreme Court denied Cox's petition for leave to appeal the denial of his post-conviction petition, and March 24, 2015, when Cox filed this Section 2254 petition, indicate a lack of diligence.  See Pace, 544 U.S. at 419 ("petitioner waited years ... to assert these claims .... [This] lack of diligence precludes equity's operation").

In fairness to Cox, he may have believed that the 1-year Section 2254 clock was not running while he pursued his Section 2-1401 petition with the Illinois state courts.  But, as mentioned above, the 1-year Section 2254 clock had expired even before Cox filed his Section 2-1401 petition.  Further, the Illinois Supreme Court held that the Section 2-1401 petition itself was untimely filed. (See d/e 8-5 at 3 ("[S]ix years, four months, and nearly a week separated the entry of the judgment and Cox's filing of the section 2-1401 petition.  As the circuit court recognized, the petition was untimely.").)  Such circumstances do not indicate that Cox pursued his rights diligently.

Second, Cox has not shown that any "extraordinary circumstance" prevented his timely filing.  Cox argues that "his untimeliness is a direct result of the many times the state courts were dilatory in their handlings of the filings in state courts," and that he has consistently been disadvantaged by being represented by counsel "who did not want to investigate the case, the facts, or the evidence" (d/e 13 at 1).  Cox also asserts that "his short-comings are a direct result of the various judges that have been so predisposed with denying relief at each level," and that the Illinois Attorney General's office has ignored his efforts to bring his plight to its attention.  (Id. at 2-3.)  Cox asks the Court to "excuse his untimeliness and lack of legal knowledge with which to properly obtain relief."  (Id. at 5.)

Even if there were merit to Cox's complaints about dilatory state courts, indifferent counsel, biased judges, and an unresponsive Attorney General's office, such merit would still not excuse Cox's late filing of his Section 2254 petition.  No delay by the Illinois state courts could have prejudiced Cox, as the 1-year filing clock for his Section 2254 petition was tolled while he awaited those courts' rulings.  And although having been wrongfully convicted

because of ineffective counsel[1] or a prejudiced judge[2] could form the

basis of a successful Section 2254 petition, the law still requires

Cox's Section 2254 petition to have been filed within 1 year of the

date on which the judgment against him became final.  28 U.S.C. §

2244(d)(1)(A).  As for the Attorney General's office, that office is not

the proper forum for Cox's grievances.  Cox has already pursued his

claims in the proper forums: his direct appeal of his conviction, his

post-conviction petition under 725 ILCS 5/122, and, had they been

timely filed, his petition for relief from judgment under 725 ILCS

5/2-1401 and this Section 2254 petition.  Finally, regarding Cox's

professed "lack of legal knowledge" (d/e 13 at 5), even if Cox had

believed in good faith that the 1-year Section 2254 clock had not

expired in 2012, and that it continued to be tolled into 2015,

"[m]istakes of law or ignorance of the proper legal procedures are

not extraordinary circumstances warranting invocation of the

doctrine of equitable tolling."  Arrieta v. Battaglia, 461 F.3d 861,

867 (7th Cir. 2006); see also Tucker v. Kingston, 538 F.3d 732, 735

(7th Cir. 2008) ("lack of legal expertise is not a basis for invoking

---

[1] Cossel v. Miller, 229 F.3d 649 (7th Cir. 2000) (remanding with direction to grant writ of
habeas corpus on ground that Section 2254 petitioner received ineffective assistance of
counsel).
[2] Bracy v. Gramley, 520 U.S. 899 (1997) (remanding to allow Section 2254 petitioner to take
discovery relating to claim that he was denied fair trial because of judge's bias).

equitable tolling").

One potential extraordinary circumstance here is the fact that Cox's wife died of a drug overdose shortly after Cox was convicted. (See d/e 1-1 at 4.) Cox has not specifically argued that his wife's death constituted an "extraordinary circumstance" that prevented him from timely filing his Section 2254 petition. Cox might, however, contend that his wife's death eliminated the only witness who could expose the State's purported conspiracy to imprison Cox. Cox might argue that, without his wife's availability to testify, he lacked a basis on which to file his Section 2254 petition—until he learned of Ms. Adermann's claim that Cox's wife admitted to lying about Cox's actions.

But for equitable tolling to be available, an extraordinary circumstance must prevent a timely filing and the petitioner must have pursued his rights diligently. Ms. Adermann's affidavit was signed 1 year, 6 months, and 21 days before Cox filed his Section 2254 petition, and the affidavit is plainly addressed to Cox himself. Thus, even if Cox's wife's death constituted an extraordinary circumstance preventing Cox from timely filing, Cox did not pursue his rights diligently after procuring the affidavit from Ms.

Adermann.

In sum, the circumstances here do not justify tolling, on equitable grounds, the deadline for Cox to file his Section 2254 petition.

## C.    Actual innocence

A "credible showing of actual innocence" may allow a petitioner to evade Section 2254's timeliness requirements. McQuiggin v. Perkins, 133 S.Ct. 1924, 1931, 1935 (2013).  But this "actual innocence gateway" is "narrow."  Gladney v. Pollard, 799 F.3d 889, 896 (7th Cir. 2015).  The petitioner must show that, "in light of new evidence, it is more likely than not that no reasonable juror would have found [him] guilty beyond a reasonable doubt." Id. (quotation omitted).  The petitioner's claim must rely on "new reliable evidence—whether it be exculpatory scientific evidence, trustworthy eyewitness accounts, or critical physical evidence," that was not presented at trial.  Id. (quotation omitted).

Cox argues that he is actually innocent (d/e 1 at 7).  As mentioned above, Cox supports his claim with an affidavit from himself, an affidavit from Bonnie Adermann, and numerous pages of transcribed testimony, photographs, and other documents.

### 1.   Cox's affidavit

Cox's affidavit—summarized near the beginning of this opinion—alleges facts that are not new: Cox testified to similar facts at his trial in 2005.  (See d/e 8-3 at 19 ("At trial, [Cox] accused Officer Childers and [the victim, Cox's wife] of having an affair and setting [Cox] up to be charged and convicted .... [Cox] asserted in his ... testimony that ... Officer Childers ... had come to [Cox's] house [and] shot him with a handgun .... While [Cox] was unconscious, Officer Childers used a taser on [Cox's] temples to erase his memory and cut the victim's throat to make it appear that [Cox] had attacked her. ... [Cox] responded to the State's questions on cross-examination by claiming that the Taylorville police department, the Christian County sheriff's department, the State's Attorney, and the circuit court judges had participated in a conspiracy to wrongfully prosecute and convict him.").)  Because Cox's affidavit does not present new evidence, the affidavit does not provide a basis for his claim of actual innocence to proceed.

### 2.   Ms. Adermann's affidavit

Ms. Adermann's affidavit asserts that, one night while Cox's wife was drinking, Cox's wife confessed that she had lied to the

police about "everything that happened" between her and Cox on the night Cox was arrested (d/e 1-1 at 5). The affidavit, signed in September 2013, constitutes "new evidence" to the extent that the affidavit was not introduced during Cox's 2005 trial. But the affidavit does not constitute a "trustworthy eyewitness account." Ms. Adermann was not present on the night Cox was arrested, and her affidavit offers only inadmissible hearsay evidence, in the form of a third-party statement (purportedly made by Cox's wife) presented for the truth of the matter asserted. See <u>United States ex rel. Thomas v. Pfister</u>, No. 07-6443, 2014 U.S. Dist. LEXIS 82703, *25 (N.D. Ill. June 17, 2014) (rejecting, as hearsay, Section 2254 petitioner's purported newly discovered evidence, including witness affidavit describing overheard conversation in which officer said another officer had been told petitioner did not commit offense at issue).

Cox's wife died from a drug overdose—Cox describes it as "accidental suicide"—shortly after Cox was convicted (d/e 1-1 at 4). Cox's wife's resultant unavailability to testify raises the prospect of admitting her alleged statement to Ms. Adermann under Federal Rule of Evidence 804. That rule provides an exception in certain

circumstances to the rule against hearsay if the declarant who made the statement sought to be admitted has died.  <u>See</u> Fed. R. Evid. 804(a)(4).  The exception is available only in certain circumstances, one of which is when the statement is offered against the party that wrongfully caused the declarant's unavailability.  Fed. R. Evid. 804(b)(6).  Here, Cox suggests that his wife's death is further evidence of the State's conspiracy to imprison him.  <u>See</u> d/e 1-1 at 4 ("Could this also be a conspiracy to commit murder?")).  If so, and the State's conspiracy to put Cox in prison also involved a plot to murder Cox's wife to ensure she would not tell anyone about the conspiracy against Cox, then Cox's wife's alleged statement could be admissible under Rule 804(b)(6).

However, Cox has not shown by a preponderance of the evidence that the State wrongfully caused his wife's death.  <u>See</u> Fed. R. Evid. 804, Advisory Committee note to subdivision (b)(6) (applying rule to all parties, including government, and adopting preponderance of evidence standard).  The mere suggestion, in one line of an affidavit, that a conspiracy to murder may possibly exist does not constitute a preponderance of the evidence.

Rule 801(d)(2)(E)—the hearsay exception for statements made

by the opposing party's co-conspirator during and in furtherance of the conspiracy—does not apply, either.  Because Cox has suggested that part of the State's conspiracy involved a plot to murder Cox's wife, Cox's wife cannot be treated as the State's co-conspirator for the purpose of applying Rule 801(d)(2)(E) here.  If the State engaged in a conspiracy to murder Cox's wife to prevent her from revealing that Cox had been framed, then by definition Cox's wife's purported statement to Ms. Adermann—in which she purportedly revealed that she helped frame Cox—could not have been a statement made in furtherance of the State's conspiracy.

### 3.    The documents and photographs

Cox's petition does not explain in what way the numerous documents and photographs attached to the petition are new.  Rather, the petition itself reveals that much, if not all, of this evidence is not new.  In the petition, Cox describes the grounds on which he filed his Section 2-1401 petition in state court in 2012.  Cox's description of his Section 2-1401 petition refers to the same arguments and evidence that Cox has presented in this Section 2254 petition:

Newl[]y Discovered Evidence show[ing] State conspired with

my wife, police, to manufacture evidence against me, perjured testimony, corrupting the judicial process and fraud on the court, Doctors were not allowed to testify by court and stand by counsel, Court ordered defendant to serve 85% of the Armed Violence without a finding by the jury that Defendant caused great bodily harm to the State's alleged victim, Actual Innocence: "denied the right to access potentially exculpatory biological evidence" and the State's withholding and surprise entry of photographic evidence.

(d/e 1 at 3).  Further, the record reflects that at least some, if not all, of the documents and photographs attached to Cox's Section 2254 petition were introduced into evidence at Cox's trial.  (See Illinois Appellate Court Rule 23 Order, d/e 8-3 at 19 ("The evidence also established beyond a reasonable doubt that [Cox] had cut the victim's throat with a kitchen knife, causing the wounds that were depicted in photographs that were introduced into evidence at trial.") (emphasis added).)  Overall, the petition does not show that the documents and photographs are "newly discovered."

In short, Cox may not evade the Section 2254's timeliness requirements because he has not presented new evidence showing that it is more likely than not that no reasonable juror would have found him guilty beyond a reasonable doubt.  Gladney, 799 F.3d at 896.

**D.    Request for counsel**

At the close of Cox's response to the Warden's motion to dismiss, Cox asks the Court to appoint counsel if the Court deems it necessary.  (See d/e 13 at 5.)  The Court has previously denied Cox's request for counsel, finding Cox to appear capable of presenting his case.  (See July 27, 2015 Text Order.)  No new circumstances call that decision into question.  Consequently, the Court again denies Cox's request for counsel.

## III.   Conclusion

For the reasons above, the Court finds that Cox is time-barred from filing his Section 2254 petition in this Court.  The United States of America's Motion to Dismiss Petitioner's Petition for Writ of Habeas Corpus (d/e 7) is GRANTED.  Plaintiff Christopher Cox's Petition for Writ of Habeas Corpus (d/e 1) is DENIED.

Rule 11(a) of the Rules Governing Section 2254 Cases requires the Court to issue or deny a certificate of appealability when it enters a final order adverse to the petitioner.  To obtain a certificate of appealability, Cox must make a "substantial showing of the denial of a constitutional right."  28 U.S.C. § 2253(c).  For such a showing to exist, reasonable jurists must be able to "debate whether

(or, for that matter, agree that) the petition should have been resolved in a different manner or that the issues presented were adequate to deserve encouragement to proceed further." <u>Slack v. McDaniel</u>, 529 U.S. 473, 484 (2000) (quotation omitted).  Here, the Court has found a procedural bar to Cox's Section 2254 petition: the 1-year statute of limitations imposed by 28 U.S.C. § 2244(d)(1). "Where a plain procedural bar is present ... a reasonable jurist could not conclude either that the district court erred in dismissing the petition or that the petition should be allowed to proceed further." <u>Id</u>.  Thus, the Court finds that Cox has not made a substantial showing of the denial of a constitutional right, and the Court declines to issue Cox a certificate of appealability.

This case is closed.

IT IS SO ORDERED.

ENTER:  January 8, 2016

FOR THE COURT:                      <u>s/ Sue E. Myerscough</u>
                             SUE E. MYERSCOUGH
                        UNITED STATES DISTRICT JUDGE